**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DONALD JAMAL WILSON,

*Claimant-Appellant,*

and

$13,963.00, MORE OR LESS, IN UNITED STATES CURRENCY (Donald Jamal Wilson, Criminal No. 3:07-0034),

*Defendant.*

No. 11-1821

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert C. Chambers, District Judge.
(3:07-cv-00470)

Argued: September 18, 2012

Decided: November 8, 2012

Before NIEMEYER, SHEDD, and DAVIS, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Shedd and Judge Davis joined.

**COUNSEL**

**ARGUED:** Richard Donald Dietz, KILPATRICK TOWN-SEND & STOCKTON, LLP, Winston-Salem, North Carolina, for Appellant. Betty Adkins Pullin, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Adam H. Charnes, Thurston H. Webb, KILPATRICK TOWNSEND & STOCKTON, LLP, Winston-Salem, North Carolina, for Appellant. R. Booth Goodwin II, United States Attorney, Charleston, West Virginia, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

When the government commenced a civil forfeiture proceeding against $13,963 seized from Donald Wilson in October 2006, based on the money's connection with Wilson's drug-trafficking activity, Wilson defended the action, claiming, without substantial support, that the money came from legitimate sources of income. The district court rejected the defense and entered a judgment of forfeiture. And we affirmed. *See United States v. $13,963, More or Less, in U.S. Currency*, 382 F. App'x 268 (4th Cir. 2010) (per curiam).

Wilson thereafter filed a motion in the district court, under Federal Rule of Civil Procedure 60(b)(4), to set aside the forfeiture judgment as void because the government had filed its civil forfeiture complaint beyond the 90-day time limit imposed on it by 18 U.S.C. § 983(a)(3). Wilson contended that the time limit was jurisdictional and therefore was not forfeited by his failure to raise it. The district court agreed with Wilson that the government had filed its forfeiture complaint late, but it denied Wilson's motion because it concluded that the time limit was a statute of limitations that Wilson had to raise, and not a jurisdictional condition.

We agree with the district court. While the time limit imposed on the government by § 983(a)(3) is mandatory, it is not jurisdictional, and because Wilson did not raise this defense during the course of the forfeiture action, he forfeited it. Accordingly, we affirm the district court's order denying Wilson's Rule 60(b)(4) motion to vacate the forfeiture judgment.

I

On October 27, 2006, when law enforcement officers stopped Wilson in his automobile to arrest him pursuant to three warrants charging him with drug trafficking offenses, they found $13,963 on his person and seized it. Thereafter, the Drug Enforcement Administration commenced an administrative forfeiture action against the seized money. When Wilson filed a claim for return of the money, his filing triggered a 90-day period during which the government was required, under 18 U.S.C. § 983(a)(3), to file a formal complaint in the district court for civil forfeiture or to take other specified action in pursuit of forfeiture. The government did file such a complaint, albeit 20 days late, and the clerk of court issued a warrant for the arrest of the currency *in rem*, which the U.S. Marshal duly executed, thereby bringing the *res* into judicial custody.

Wilson appeared *pro se* in the civil forfeiture proceeding and asserted a claim that the $13,963 came from legitimate sources of income. The district court, however, concluded that the evidence indisputably established that the money was substantially connected to Wilson's drug-trafficking activities. Accordingly, it entered a summary judgment of forfeiture on October 13, 2009. After affirming the judgment, we issued our mandate on September 1, 2010.

Roughly two weeks later, Wilson, again appearing *pro se*, filed a motion under Federal Rule of Civil Procedure 60(b)(4), which authorizes a court to give relief from a judgment that

is void. Wilson noted that the government had filed its forfeiture complaint late and argued that because the time limit was jurisdictional, the court lacked authority to enter the forfeiture judgment.

The government conceded that it had missed, by 20 days, the deadline imposed by § 983(a)(3). The government disputed, however, that the deadline was jurisdictional, arguing that the provision was instead a statute of limitations that Wilson had failed to raise and therefore had forfeited.

The district court agreed with the government, holding that § 983(a)(3)'s 90-day deadline was not jurisdictional and denying Wilson's Rule 60(b)(4) motion by order dated June 3, 2011. In reaching its conclusion, the court emphasized the absence of express jurisdictional language in § 983(a)(3); the existence of other statutory provisions conferring federal jurisdiction over forfeiture actions; and the absence of a line of cases that had treated § 983(a)(3) as a jurisdictional condition.

From the district court's order denying his motion to set aside the forfeiture judgment as void, Wilson timely filed this appeal. We appointed counsel to represent him.

## II

While it is conceded that the government failed to file its civil forfeiture complaint within 90 days after Wilson filed his administrative claim for return of the $13,963, Wilson at no time during the course of the proceedings challenged the government's tardiness.

In these circumstances, we conclude that unless compliance with the 90-day filing requirement imposed by § 983(a)(3) was a condition of the district court's subject matter jurisdiction, Wilson forfeited any objection based on the government's late filing. *See Eriline Co. v. Johnson*, 440 F.3d 648,

654 (4th Cir. 2006) ("As a defense waivable by the inaction of a party, the statute of limitations bears the hallmarks of our adversarial system of justice, a system in which the parties are obliged to present facts and legal arguments before a neutral and relatively passive decision-maker"); *Peterson v. Air Line Pilots Ass'n Int'l*, 759 F.2d 1161, 1164 (4th Cir. 1985) ("It is well settled that the defense of limitations is waived unless asserted promptly by way of answer or motion"). But if the 90-day requirement is a condition of the district court's subject matter jurisdiction, then Wilson would be entitled to an order vacating the judgment of forfeiture. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) ("Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation").

Wilson advances several arguments in support of his contention that § 983(a)(3) is jurisdictional. He argues that because the 90-day deadline for the government's action is fixed *by statute* and *not by rule* and because that statute *mandates* the release of the seized assets if the deadline is not met, Congress manifested its intent that the 90-day requirement be "a mandatory, jurisdictional deadline." He argues further that the legislative history supports his interpretation, as Congress indicated that a purpose in imposing the 90-day time limit on the government was to protect unrepresented property owners, such as him. He argues that failing to interpret the 90-day deadline as jurisdictional would give the government an incentive to file forfeiture actions even when late, thus undermining the statute's purpose of providing protection to property owners.

The government contends that the statutory language gives no indication that the 90-day requirement is jurisdictional. To the contrary, it argues, the provision authorizes extensions after the 90-day period, belying any notion that the 90-day requirement is jurisdictional. Finally, it claims that allowing the forfeiture to stand would not frustrate § 983(a)(3)'s pur-

pose because here the short delay was neither excessive nor in bad faith and because Wilson received his day in court.

We are thus presented with the straightforward question of whether Congress, in imposing a 90-day deadline on the government for filing civil forfeiture actions, created a condition of the district court's subject matter jurisdiction.

Subject matter jurisdiction defines a court's power to adjudicate cases or controversies—its adjudicatory authority—and without it, a court can only decide that it does not have jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Because jurisdictional limits define the very foundation of judicial authority, subject matter jurisdiction must, when questioned, be decided before any other matter. *See id.* at 93-95. Indeed, "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez*, 132 S. Ct. at 648. For these reasons, a lack of subject matter jurisdiction cannot be waived or forfeited, and no other matter can be decided without subject matter jurisdiction. These principles are fundamental and important.

While these principles are fundamental and important, however, the determination of subject matter jurisdiction is often rendered difficult by its close proximity to determinations of whether statutorily specified ingredients of a cause of action have been met or whether claims-processing rules have been followed. *See Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1243-44 (2010). Thus, the Supreme Court has, in the last decade, frequently addressed whether an element of a claim or a claims-processing rule is "jurisdictional." *See, e.g.*, *Gonzalez*, 132 S. Ct. 641; *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197 (2011); *Dolan v. United States*, 130 S. Ct. 2533 (2010); *Reed Elsevier*, 130 S. Ct. 1237; *Union Pac. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Committee of Adjustment, Cent. Region*, 558 U.S. 67 (2009);

*John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008); *Bowles v. Russell*, 551 U.S. 205 (2007); *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006); *Eberhart v. United States*, 546 U.S. 12 (2005) (per curiam); *Kontrick v. Ryan*, 540 U.S. 443 (2004).

In the past, the Court has referred to nonjurisdictional procedural requirements as claims-processing rules, which do not "limit a court's jurisdiction, but rather regulate the timing of motions or claims brought before the court." *Dolan*, 130 S. Ct. at 2538; *see also Kontrick*, 540 U.S. at 454-55. The label "claims-processing rule," however, does not have independent legal significance in determining whether the requirement is jurisdictional because "Congress is free to attach the conditions that go with the jurisdictional label to a rule that [courts] would prefer to call a claim-processing rule." *Henderson*, 131 S. Ct. at 1203; *see also Gonzalez*, 132 S. Ct. at 665 (Scalia, J., dissenting) ("The proper dichotomy is between claims processing rules that are jurisdictional, and those that are not"). Thus, Congress can condition jurisdiction on compliance with a claims-processing rule, so long as it provides a "clear indication" that the rule is jurisdictional. *Henderson*, 131 S. Ct. at 1203; *see also Gonzalez*, 132 S. Ct. at 649 (describing application of "clear-statement principle").

In determining whether Congress has clearly expressed its intent in this respect, we examine whether the provision "speak[s] in jurisdictional terms or refer[s] in any way to the jurisdiction of the . . . courts." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982) (*quoted in Henderson*, 131 S. Ct. at 1204; *Arbaugh*, 546 U.S. at 515); *Gonzalez*, 132 S. Ct. at 649 (quoting *Arbaugh*, 546 U.S. at 515). Even so, the Court has noted that Congress "need not use magic words in order to speak clearly on this point." *Henderson*, 131 S. Ct. at 1203. Rather, "context, including [the Supreme] Court's interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional." *Reed Elsevier*, 130 S. Ct. at 1248. Indeed, "[w]hen a long line of

[the Supreme] Court's decisions left undisturbed by Congress has treated a similar requirement as 'jurisdictional,' [courts] will presume that Congress intended to follow that course." *Henderson*, 131 S. Ct. at 1203 (internal quotation marks and citations omitted).

We begin the analysis of the 90-day requirement before us by taking into account its statutory context. At a general level, federal district courts are given original jurisdiction of all civil actions brought by the United States, "[e]xcept as otherwise provided by act of Congress." 28 U.S.C. § 1345. And, more specifically, Congress has granted United States district courts "original jurisdiction exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, *or forfeiture* . . . incurred under any act of Congress." *Id.* § 1355(a) (emphasis added). One such act is the Controlled Substances Act, which includes a provision specifying that money used to buy illegal drugs or that represents the proceeds from their sale "shall be subject to forfeiture to the United States." 21 U.S.C. § 881(a)(6). This provision contemplates that such forfeitures may be accomplished through either criminal or civil proceedings. *See id.* § 881(e)(1). And when the United States elects to proceed civilly, the procedural rules provided by 18 U.S.C. § 983 govern the proceeding.

Section 983, entitled "General rules for civil forfeiture proceedings," was enacted in 2000 as part of the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202. This section requires, for example, that when notice is required to be given to interested parties, the government must generally send the notice within 60 days of seizing the property. 18 U.S.C. § 983(a)(1)(A)(i). It also establishes how an individual who receives such a notice or any other person claiming property seized in an administrative forfeiture proceeding may file a claim to the property. *Id.* § 983(a)(2). And it provides that once an individual makes such a claim, the government must file its civil forfeiture complaint in court or

take other specified action in pursuing forfeiture within 90 days. Specifically, that provision states with respect to civil forfeiture:

> *Not later than 90 days after a claim has been filed*, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.

*Id.* § 983(a)(3)(A) (emphasis added). If the Government does not file a complaint or take other action within 90 days as required, it must "release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." *Id.* § 983(a)(3)(B).

In this statutory context, it readily appears that the provisions of § 983 are procedural rules for pursuing the forfeiture of seized assets. The subject matter jurisdiction for forfeiture is conferred by 28 U.S.C. § 1355(a); the authority to forfeit is provided by 21 U.S.C. § 881(a)(6); and the rules of procedure for pursuing a civil forfeiture are provided by 18 U.S.C. § 983. But, as already noted, procedural rules can be made conditions of subject matter jurisdiction if Congress clearly so indicates.

In this case, we conclude, based on several considerations, that Congress has not indicated, clearly or otherwise, that the procedural rule of § 983(a)(3) is a condition of jurisdiction. *First*, § 983(a)(3)'s language does not suggest, let alone *clearly* indicate, that district courts lack adjudicatory authority over a civil forfeiture complaint that was filed late by the government. To be sure, § 983(a)(3) does contain a mandatory

limitation requiring the government's prosecutor to file its complaint not later than 90 days after a claim has been filed. But that limitation is imposed *on the Executive Branch of government*, not as a condition of the *court's authority*. Stated otherwise, the provision "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Zipes*, 455 U.S. at 394.

*Second*, the fact that the provision allows "a court in the district in which the complaint will be filed [to] extend the period for filing a complaint for good cause shown or upon agreement of the parties," 18 U.S.C. § 983(a)(3)(A), undercuts any argument that the deadline is jurisdictional. Congress does not typically allow an agreement of the parties to define the scope of the district court's authority to hear a case.

*Third*, § 983(a)(3) provides that if the government fails to file its complaint or take other specified action within the 90-day period, the government must release the property and loses any right to pursue it further. While Congress undertook to provide a sanction for the failure to comply with its terms, in doing so, it did not provide or suggest that the court loses subject matter jurisdiction as a result of noncompliance.

*Fourth and finally*, we find it significant that the 90-day deadline "is located in a provision 'separate' from those granting federal courts subject-matter jurisdiction over" forfeiture actions. *Reed Elsevier*, 130 S. Ct. at 1245-46. As we have noted, the federal district courts are explicitly given subject matter jurisdiction over civil forfeiture actions by 28 U.S.C. § 1345, which confers jurisdiction over civil actions brought by the United States, and by 28 U.S.C. § 1355(a), which grants jurisdiction more specifically over civil forfeiture actions. We are unwilling to conclude that Congress limited those jurisdictional grants when it provided rules in § 983(a)(3), especially when that provision does not "refer in any way to the jurisdiction of the district courts." *Zipes*, 455 U.S. at 394.

To be sure, the lack of clear jurisdictional language does not conclusively end the analysis. Congress' intent can be inferred from the existence of a "long line" of Supreme Court decisions "left undisturbed by Congress" that "treated a similar requirement as 'jurisdictional.'" *Henderson*, 131 S. Ct. at 1203 (internal quotation marks and citation omitted). For example, the Court in *Bowles* relied on the fact that it had "long and repeatedly held that the time limits for filing a notice of appeal are jurisdictional in nature." 551 U.S. at 206; *see also Reed Elsevier*, 130 S. Ct. at 1248 ("The statutory limitation in *Bowles* was of a type that we had long held *did* 'speak in jurisdictional terms' even absent a 'jurisdictional' label") (emphasis in original). Similarly, the Court relied on *stare decisis* grounds in *John R. Sand & Gravel Co.* to conclude that the special statute of limitations governing the Court of Federal Claims is jurisdictional. 552 U.S. at 138-39. But there is no similar line of precedents with respect to § 983(a)(3). Absent such precedents, the applicable background principles against which Congress enacted this special limitations period for certain civil forfeiture complaints include the general principle that "the law typically treats a limitations defense as an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver." *John R. Sand & Gravel Co.*, 552 U.S. at 133.

Relying on the language in *Bowles* that "[j]urisdictional treatment of statutory time limits makes good sense," 551 U.S. at 212, Wilson argues that it is jurisdictionally significant that the 90-day deadline is contained within a *statute*, as opposed to a court-promulgated *rule*. But he makes too much of this. The Supreme Court has clarified its *Bowles* language, noting that *Bowles* did not "hold that all statutory conditions imposing a time limit should be considered jurisdictional." *Reed Elsevier*, 130 S. Ct. at 1247. And, as we noted above, because the statutory time limit does not clearly indicate that it is jurisdictional, Wilson would at least have to advance a

"long line" of precedents so finding, along with Congress'
inaction.

Wilson argues also that because Congress imposed such
severe consequences for failure to meet the 90-day deadline,
it manifested an intent to make the deadline jurisdictional. But
this argument provides Wilson with little support. The bur-
dens for failing to meet the deadline are imposed on the gov-
ernment, not the court. If Congress had intended that the
failure to meet the 90-day deadline be jurisdictional, it surely
could have so indicated by stating that the court would lose
jurisdiction if the deadline were not met. Indeed, the fact that
Congress elected to include a specific sanction against the
government without expressing any limitation on the district
court's adjudicatory authority suggests that the provision
should *not* be treated as jurisdictional.

Finally, Wilson argues that the statutory purpose of protect-
ing property owners is best served if the 90-day deadline is
construed to be jurisdictional. He maintains that this is espe-
cially so because many property owners contesting a forfei-
ture cannot afford representation. Because of this fact, he
argues, Congress made the 90-day deadline jurisdictional so
that the deadline would be given effect regardless of whether
the property owner had counsel advising him to raise it. The
statutory language, however, does not support Wilson's argu-
ment. The statute imposes a 90-day deadline *on the govern-
ment* and provides the sanction that the property will be
released *if the government* does not meet its deadline. But
Congress did not address the power of the court. Moreover,
Congress appears to have addressed Wilson's concern regard-
ing the obstacles facing *pro se* property owners by authorizing
district courts to appoint counsel in many forfeiture cases. *See*
18 U.S.C. § 983(b).

At bottom, we conclude that the 90-day deadline imposed
in § 983(a)(3) is not jurisdictional and that therefore Wilson

forfeited his limitations argument by not raising it during the forfeiture proceedings.

## III

In addition to his contention that § 983(a)(3)'s 90-day time limit is jurisdictional, Wilson contends that the district court lacked *in rem* jurisdiction over the seized currency because when the government failed to file a complaint within 90 days, the government's arrest of the property became illegal, precluding the court from lawfully taking custody of the currency. He argues that the district court simply did not have a *res* before it to forfeit. While Wilson is correct that the government should have released the property under § 983(a)(3), it does not follow that the government's failure to do so immunized the property from arrest by the district court and from subsequent forfeiture. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039-40 (1984) (noting that, just as an unlawful arrest does not result in the suppression of the "body" of the defendant in a criminal proceeding, the unlawful seizure of property does not result in the suppression of that property in a forfeiture proceeding); *United States v. Martin*, 662 F.3d 301, 306 (4th Cir. 2011) ("The illegal seizure of property does not immunize that property from forfeiture as long as the government can sustain the forfeiture claim with independent evidence").

## IV

Finally, Wilson contends that we should, at the very least, remand this case to the district court to enable him to press a claim under Federal Rule of Civil Procedure 60(b)(6), the catchall provision of Rule 60(b) that authorizes relief for any reason "that justifies relief," so long as the reason is "extraordinary." *See Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (en banc). He argues that because he was acting *pro se*, the district court was required to construe his Rule 60(b)(4) motion as including a Rule 60(b)(6) motion claiming that the

government's failure to comply with § 983(a)(3) entitles him, as a matter of justice, to have the forfeiture judgment against him vacated. This argument, however, overvalues Wilson's *pro se* status. Although courts must liberally construe the claims of *pro se* litigants, *Boag v. MacDougall*, 454 U.S. 364 (1982) (per curiam), "the 'special judicial solicitude' with which a district court should view . . . pro se [filings] does not transform the court into an advocate," *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Moreover, it is far from clear that Wilson's situation satisfies Rule 60(b)(6)'s extraordinary circumstances standard. In any event, we cannot conclude that the district court abused its discretion by failing to construe Wilson's motion under Rule 60(b)(4) to include a motion under Rule 60(b)(6) that should be granted.

Accordingly, the district court's order of June 3, 2011, is

*AFFIRMED*.